702 P.2d 353

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**William Cliff TALLEY,**
**Defendant-Appellant.**

**No. 7921.**

Court of Appeals of New Mexico.

June 4, 1985.

Janet Clow, Chief Public Defender, Kathryn Hormby, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of two counts of burglary and one count each of larceny and arson, defendant appeals. The dispositive issue is ineffective assistance of counsel. We reverse and remand for a new trial on all counts.

Defendant and Jimmie Don Shamlin met while they were both staying at the Gospel Rescue Mission in Las Cruces, New Mexico. Shamlin had a car and defendant had some money. During the day of the Fourth of July, defendant and Shamlin drove around and shared between five to twelve pitchers of beer at the Welcome Inn. After the Welcome Inn closed, defendant and Shamlin drove to a residence known as "the old Burk house" and removed items valued at over $1,000, or more. The residence had recently been rented by Amazing Grace Fellowship which had employed defendant to do some of the repairs needed. At the time of the theft, defendant informed Shamlin that, since his fingerprints were in places where they should not be, he was going to set fire to the place. A fire was set and subsequently rekindled.

The only witness presented by the defense was Don Combs, a mental health professional, who testified that defendant suffered from an impulse disorder of pyromania. He testified that the disorder was increased by drinking. He also testified that the disorder was serious because of defendant's extensive history of setting fires.

Defendant also claims that it is double jeopardy to prosecute him on the two counts of burglary. We answer his claim only because we remand the case. Because defendant committed the burglaries for two separate reasons—to steal and to commit arson—it is not double jeopardy to prosecute him on two counts of burglary. The claim is without merit.

### Ineffective Assistance of Counsel

The standard for ineffective assistance of counsel in New Mexico was

changed from the old test of a "sham and mockery" to that of whether defense counsel exercised the skill of a reasonably competent attorney. *State v. Orona,* 97 N.M. 232, 638 P.2d 1077 (1982); *State v. McGuinty,* 97 N.M. 360, 639 P.2d 1214 (Ct.App.1982). *Orona* explained that the change in the language articulating the standard of ineffective assistance was simply a formalization of recent trends in the case law, even though the "sham and mockery" standard was nominally still the rule until *Orona* and *McGuinty.* Defendant has the burden of showing both the incompetence of his attorney and the proof of prejudice. *McGuinty.* Further, absent a showing by defendant, counsel is presumed competent. *State v. Moser,* 78 N.M. 212, 430 P.2d 106 (1967). In considering an ineffectiveness claim, the entire proceeding must be considered as a whole. *State v. French,* 92 N.M. 94, 582 P.2d 1307 (Ct.App. 1978); *State v. Kincheloe,* 87 N.M. 34, 528 P.2d 893 (Ct.App.1974).

█ In considering a claim of ineffective assistance, the duties of counsel are considered. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). These duties include loyalty, avoiding a conflict of interest, consulting with defendant on important decisions, keeping defendant informed of important developments, and using skill and knowledge to render the trial a reliable adversarial testing process. *Strickland.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland. See also United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

Cases in New Mexico that have found ineffective assistance of counsel involved conflict of interest (*State v. Aguilar,* 87 N.M. 503, 536 P.2d 263 (Ct.App.1975)), the failure to sufficiently instruct client so that a guilty plea could not have been freely given (*State v. Kincheloe* ), and a cumulation of eight instances of deficient attorney

performance (*State v. Pitts,* 700 P.2d 650 (1985)). In *State v. Luna,* 92 N.M. 680, 594 P.2d 340 (Ct.App.1979), this Court remanded a matter for determination of whether failure to file a pretrial motion concerning a conspiracy charge, which either had been dismissed or upon which co-conspirators had been acquitted, constituted ineffective assistance of counsel.

### a. *Failure to tender a proper instruction on defense of inability to form specific intent.*

Defense counsel failed to request a proper instruction on the defense of inability to form specific intent. Instruction Number 10, the instruction given the jury, does not comply with the use instruction which requires that the instruction "[r]epeat the applicable intent to do a further act or achieve a further consequence from the essential elements instruction of the crime." NMSA 1978, UJI Crim. 41.11 (Repl.Pamp.1982). *State v. Kendall,* 90 N.M. 236, 561 P.2d 935 (Ct.App.1977), considered this requirement. In *Kendall,* the defendant complained that UJI Crim. 41.11 was not given following *each* of the kidnapping counts, but instead followed all the kidnapping counts. We held that the "application of a specific intent instruction to several counts involving the same specific intent crime was not a substantial modification of U.J.I.Crim. 41.11." The complaint of defendant in this case is of greater magnitude than the alleged error in *Kendall.*

█ In this case, the specific intent instruction followed the elements instructions for three different specific intent crimes—burglary, larceny, and arson. Instead of repeating the language concerning specific intent of each of the substantive crimes, the specific intent instruction simply described the intent in question as "deliberate intention to commit the crimes." The problem in this case arose from the fact that UJI Crim. 41.11 was not given. Rather, the court gave a modified NMSA 1978, UJI Crim. 41.10 (Repl.Pamp.1982), which is the inability to form the specific intent instruction for first degree murder of the willful and deliberate variety. Use

Note 1 to UJI Crim. 41.10. This is contrary to the use instruction for UJI Crim. 41.11, the appropriate instruction in this case, which requires that the "applicable intent to do a further act or achieve a further consequence" be included in the instruction to describe the type of intent that defendant may not have been capable of forming. Use Note 4 to UJI Crim. 41.11. Moreover, this error is compounded by the fact that each of the crimes charged—two counts of burglary, one count of larceny and one count of arson—all carry a specific intent element unique to that crime. (UJI Crim. 41.11's Committee commentary provides that the instruction is only applicable to crimes that contain an element of intent to do a further act or achieve a further consequence. *See State v. Beach*, 102 N.M. 642, 699 P.2d 115 (1985).) The instructions given were thus contrary to law and, as a consequence, did not allow the jury to make a decision on the effect of defendant's mental disorder, which only affects intent to achieve a further consequence or do a further act. *See State v. Buhr*, 82 N.M. 371, 482 P.2d 74 (Ct.App.1971). *Cf. State v. Trivitt*, 89 N.M. 162, 548 P.2d 442 (1976).

The state contends that even if the giving of the erroneous instruction constituted incompetence on the part of defense counsel, no prejudice was shown because Combs' testimony regarding defendant's inability to form a specific intent was "highly equivocal, and even internally contradictory." We disagree.

 Combs testified that defendant was a pyromaniac and that pyromaniacs were unable to avoid impulses to set fires. He further testified that when defendant lost his impulse control through intoxication his behavior was not under his control. Defendant suffered prejudice from the fact that the jury was not properly instructed concerning inability to form specific intent.

b. *Failure to tender limiting instruction regarding defendant's statement made during a mental examination.*

 Defendant next argues that ineffective assistance of counsel is demonstrated by the fact that defense counsel did not request that NMSA 1978, UJI Crim. 40.09 (Repl.Pamp.1982) be given, which would have directed the jury that Combs' testimony concerning what defendant said should only be used for the purpose of considering the question of defendant's insanity. The testimony that most concerns defendant was information elicited by the prosecutor on cross-examination of Combs that the defendant had previously set fire to a car that he had stolen because he had touched everything in the car.

The state argues that the failure to give this limiting instruction did not create a reasonable probability that the jury would have reached a different result, one of the tests for showing ineffective assistance of counsel. It contends that the prosecutor's use of the statement concerning the defendant's previous burning of a stolen car to destroy his fingerprints was only for the purpose of refuting Combs' opinion as to the defendant's mental disorder. Thus, the state concludes, since the jury was not urged to use the statement as factual evidence of guilt, defendant has not shown that UJI Crim. 40.09 was necessary to the jury's deliberations.

 This reasoning is fallacious. According to the Committee commentary to UJI Crim. 40.09, " 'such statements could be prejudicial * * * [and] [t]he district judge must therefore * * * be careful in instructing the jury as to the significance of the testimony.' " Nowhere is the giving of the instruction limited to situations where the testimony is used by the prosecution for the wider improper purpose. The failure to tender the instruction showed the incompetence of defense counsel. *McGuinty.* Standing alone, the omission was not prejudicial, but it was prejudicial when combined with the error discussed previously. This instance of incompetence is cumulatively an aspect of ineffective assistance of counsel. *State v. Pitts.*

c. *Failure to tender instruction concerning lack of ability to form a specific intent due to intoxication.*

 Defendant argues that the defense of intoxication was raised by defense coun-

sel in his opening statement. No instruction was tendered on this theory of the case. Throughout the opening statement, defense counsel stated that defendant's alcoholism, *coupled with* his mental disorder, caused defendant to be subject to irresistible impulses. Thus, defense counsel did not act incompetently in not requesting an instruction concerning the lack of ability to form specific intent due to his intoxication. *See State v. Samora,* 82 N.M. 252, 479 P.2d 532 (Ct.App.1970), in which this Court ruled that failure to request this instruction, even when evidence revealed defendant to be quite intoxicated "may have been no more than bad strategy on the part of counsel." But given the facts of this case and Combs' testimony, it was one more thread with which to tie the knot of ineffective assistance of counsel.

█ Based solely on the foregoing, we hold that the cumulative effect of failure of defendant's counsel to tender proper jury instructions amounted to the denial of effective assistance of counsel. Defense counsel acted incompetently at least in the area of the instructions and likely in his preparation of the defense. This incompetence prejudiced defendant because no defense was presented at all for the larceny and first burglary charge (defense counsel argued that Shamlin was the principal actor in these crimes). Defense counsel failed to present instructions to the jury on one of the major defenses to all four counts—the defense of inability to form specific intent. This omission is more than a matter of trial tactics. *See Trivitt; Samora.*

*State v. Chacon,* 80 N.M. 799, 461 P.2d 932 (Ct.App.1969), states that this Court's "obligation on review, however, is to affirm a conviction unless the record reveals a very real possibility of a miscarriage of justice." Under the circumstances here a miscarriage of justice did occur. We recognize that defendant is not entitled to a perfect trial free from error, but he is at least entitled to a fair trial with his defenses fairly presented. *Compare State v. Moore,* 94 N.M. 503, 612 P.2d 1314 (1980).

Reversed and remanded for a new trial. IT IS SO ORDERED.

DONNELLY, C.J., and ALARID, J., concur.

## ORDER AND ORDER TO SHOW CAUSE

In this cause, defendant filed a pro se notice of appeal on March 28, 1984. The trial court's order of May 1, 1984, appointing the public defender also ordered trial counsel be responsible for the preparation and filing of the docketing statement. On June 22, 1984, the public defender filed a motion for compliance with NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App. Rule 205 (Repl.Pamp.1983). On July 2, 1984, this court issued an order and order to show cause, ordering trial counsel, Jose Arrieta, to file a docketing statement by July 16, 1984, and further ordering Mr. Arrieta and the public defender to show cause why they should not be held in contempt of this court for their failure to insure that a timely docketing statement was filed.

█ The public defender has responded to our order to show cause, detailing its activities to insure the timely filing of a docketing statement. Its activities included communication with defendant, ascertainment that the public defender had been appointed as counsel on appeal in an order which provided that trial counsel file the docketing statement, its communications with this court, and conversations with Mr. Arrieta in which Mr. Arrieta agreed to file the docketing statement by June 18, 1984. This response shows cause why the public defender should not be held in contempt of this court and the order to show cause directed at the public defender is, accordingly, quashed.

Mr. Arrieta has also responded to the order to show cause. His response states that, in his opinion, the appeal is frivolous and requests withdrawal on the ground that he is not obligated to advance frivolous contentions in this court. The re-

sponse states that the only issue of which Mr. Arrieta is aware is ineffective assistance of counsel. Mr. Arrieta states his understanding of *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and cases therein to be that, in this situation, trial counsel's responsibilities are at an end and that it is the responsibility of appellate counsel and the appellate court to review the entire record of proceedings and decide whether the appeal is frivolous. Mr. Arrieta has still not filed a docketing statement.

 This response does not show cause why Mr. Arrieta should not be held in contempt for the following reasons. First, *Franklin* and the cases therein were decided in the context of rules of appellate procedure which provide that appellate contentions are decided on the basis of a record which contemplates a verbatim transcript of proceedings. Our rules of appellate procedure, of which Rule 205 is a part, do not so provide. It has never been held that a complete verbatim transcript of proceedings is necessary to afford adequate appellate review. *State v. Herrera*, 84 N.M. 46, 499 P.2d 364 (Ct.App.1972). Our appellate rules provide for a docketing statement, Rule 205, which, if not challenged, is accepted as the facts of the case. *State v. Sisneros*, 98 N.M. 201, 647 P.2d 403 (1982). The docketing statement is an adequate alternative to a complete transcript of proceedings. Reading *Franklin* and Rule 205 together, it is obvious that trial counsel's responsibility, in a case where he believes the appeal is frivolous, is nonetheless to prepare a docketing statement of sufficient completeness to afford adequate appellate review. Defendant has an absolute right of an appeal. N.M. Const. art. VI, § 2. This means that counsel should state the contentions advanced by a defendant pursuant to *Franklin.* Counsel should also include in the docketing statement a statement of all facts material to those contentions pursuant to Rule 205(a)(3) and should also inform this court, pursuant to Rule 205(a)(4), whether the contentions were raised in the trial court.

Because of the nature of appellate review, in the event that contentions advanced by defendant would not appear of record, counsel should also inform this court of that fact.

 Second, if the foregoing was not clear to Mr. Arrieta, the least he should have done was to arrange for his withdrawal in a timely fashion. His unilateral notice of withdrawal, filed in the trial court, was ineffective to do this. It was not only inaccurate, but it also violated NMSA 1978, Crim.P.Rule 53(b) (Repl.Pamp.1980) and Rule 205(b).

Mr. Arrieta is, therefore, ordered to appear in the court of appeals courtroom on, August 7, 1984, at 1:30 P.M. to show cause why he should not be held in contempt of this court.

Under the unique circumstances of this case detailed above, in order to insure defendant's right to appeal, Mr. Arrieta's motion to withdraw is granted. The public defender shall be responsible for filing the docketing statement in this cause. The docketing statement shall be due not later than August 6, 1984. The public defender shall exercise its judgment in determining the extent and mode of preparation necessary to filing the docketing statement. If conversations with trial counsel and the defendant are deemed sufficient, the docketing statement shall be written on the basis of those. If not, the public defender shall obtain the tapes of the trial and base the docketing statement on them. In any case, this court has set the due date for filing the docketing statement sufficiently in advance to allow the public defender to listen to the tapes. No extensions will be granted. Citations to tape counters are not necessary.